**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ADVANCED INTERVENTIONAL PAIN &
DIAGNOSTICS OF WESTERN ARKANSAS, LLC,

        Plaintiff,

v.                              Case No. 8:20-cv-02704-WFJ-CPT

ADVA HOLDINGS, LLC, and ENCOMPASS
SPECIALTY NETWORK, LLC,

        Defendants.

_____/

**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT**
**OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................1

II.     OVERVIEW OF THE LITIGATION ................................................................3

        A.  Background ..............................................................................................3

        B.  The Proposed Settlement ........................................................................5

                1.  Settlement Benefits ........................................................................5

                2.  Notice ............................................................................................6

                3.  Class Counsel's Application for (i) Attorneys' Fees and Costs, and (ii) a Service
                    Award ............................................................................................7

III.    APPLICABLE LEGAL STANDARDS ............................................................8

IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, WARRANTING
        FINAL APPROVAL ........................................................................................10

        A.  Plaintiff and Class Counsel Have Adequately Represented the Class, Obtaining an
            Exceptional Settlement to Which No Class Member or Governmental Entities Have
            Objected ................................................................................................10

        B.  The Settlement Was the Result of Informed, Arm's Length Negotiations Between the
            Parties ....................................................................................................11

        C.  The Settlement Provides Exceptional Relief for the Class and Is Within the Range of
            Possible Recovery ..................................................................................13

                1.   Continued litigation would be risky, complex, lengthy, and expensive .........13

                2.   The Settlement is within the range of possible recovery ...............................15

                3.   The Settlement provides for a straightforward claims process .......................16

                4.   The requested attorneys' fees are reasonable and in line with similar   awards
                     approved in the Eleventh Circuit ......................................................16

                5.  The Settlement Agreement contains all agreed upon terms ............................17

        D.  The Settlement Treats All Class Members Equitably and Enjoys the Support of the
            Settlement Class ....................................................................................17

E.  The Notice Program Satisfies Rule 23 and Due Process, and Constitutes The Best Notice Practicable ...................................................................................................................18

V.  FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE .........18

VI.  CONCLUSION ..............................................................................................................19

Plaintiff Advanced Interventional Pain & Diagnostics of Western Arkansas, LLC ("Plaintiff" or "Settlement Class Representative"), by and through undersigned counsel and pursuant to the Settlement Agreement dated February 23, 2021 (ECF No. 93-1) and this Court's Preliminary Approval Order, dated March 3, 2021 (ECF No. 95) (the "Preliminary Approval Order"), hereby requests that the Court grant final approval of the settlement (the "Settlement") of the above-referenced action (the "Action"). Specifically, Plaintiff respectfully requests this Court enter an order, in substantial form to the proposed order attached as Exhibit D to the Settlement Agreement, (i) granting final approval of the Settlement as fair, reasonable, and adequate; (ii) granting final certification to the Settlement Class; and (iii) finding that the notice program as set forth in Section 5 of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23(c) and (e), as well as due process, and constitutes the best notice practicable under the circumstances.

## I.    <u>INTRODUCTION</u>

Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") and the Court's Preliminary Approval Order, Plaintiff respectfully requests that the Court grant final approval of the Settlement reached between Plaintiff and Defendants Adva Holdings, LLC ("Adva") and Encompass Specialty Network, LLC ("Encompass") (collectively, "Defendants") (collectively with Plaintiff, the "Parties").

Plaintiff firmly believes that the Settlement is in the best interest of the Settlement Class and clearly satisfies the standard for approval as discussed herein. Plaintiff and Class Counsel have adequately represented the Class, obtaining an exceptional Settlement to which no class member or governmental entities have objected. The Settlement is the product of arm's-length negotiations by experienced and informed counsel with a firm understanding of the strengths and weaknesses

of their clients' respective claims and defenses, and it was reached only after intensive litigation, discovery, and arm's length negotiations, including a full-day mediation session.

Under the Settlement, Defendants have agreed to make available for the benefit of the Settlement Class a cash settlement fund that has a maximum value of $9,000,000.00, inclusive of Attorneys' Fees and Costs and Notice and Administration Costs. The claims process provided for in the Settlement Agreement is simple and straightforward.

Moreover, consistent with the "benchmark" in Eleventh Circuit precedent, Class Counsel is requesting attorney's fees equal to 25% of the Settlement Fund, as well as $11,233.33 in reimbursement of litigation expenses. Plaintiff also requests a service award of $5,000, to be paid as a separate payment by Defendants independent of the Settlement Fund.

Class Counsel believe that this is an excellent result for the Settlement Class, especially when weighed against the costs, risks, and delay of continued litigation, trial, and appeal. Moreover, the Court-approved notice program has been fully implemented, with an estimated notice reach of 83%, which is well within the range endorsed by the Federal Judicial Center. *See* Declaration of Michelle Robinson Re: Notice Procedures ("Robinson Decl.") at ¶ 6. And, to date, no objections have been received and only two (2) requests for exclusion have been received. *See id*. at ¶¶ 10-11; *see also* Declaration of Randall Pulliam ("Pulliam Decl.") at ¶ 7.

Accordingly, Plaintiff respectfully submits that the Settlement satisfies all criteria for final approval, and specifically requests this Court: (i) grant final approval of the Settlement as fair, reasonable, and adequate; (ii) grant final certification to the Settlement Class; (iii) find that the notice program as set forth in Section 5 of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23(c)

and (e), as well as due process, and constitutes the best notice practicable under the circumstances; and (iv) enter final judgment.

## II.     <u>OVERVIEW OF THE LITIGATION</u>

### A.  Background

On December 20, 2019, Plaintiff filed a complaint against Paradigm Management Services, LLC ("PMS"), in the Northern District of California, asserting it had violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") as a result of its alleged policy and practice of faxing unsolicited advertisements without providing the requisite opt-out notices. The TCPA makes it unlawful to send facsimile advertisements without a proper opt-out notice if the sender did not receive prior express permission from the recipient, a prohibition commonly referred to as the junk-fax ban provision of the TCPA. The TCPA provides for statutory damages of $500 for each violation of the junk-fax ban provision, which may be trebled to $1,500 per violation if a defendant's conduct is shown to be willful, knowing, or intentional.

On February 24, 2020, PMS filed a Motion to Dismiss the complaint asserting that the fax in question is an informational communication and not an advertisement. On July 1, 2020, the Court denied the Motion to Dismiss. On August 5, 2020, Plaintiff and PMS participated in a Case Management Conference with the Court at which time counsel for PMS asserted that PMS was not the proper party to the litigation as it was not the sender of the fax. Rather, as was later disclosed in discussions between counsel, PMS's position was that the proper sender of the fax was two entities related to PMS – namely Adva and Encompass. With this information and upon performing additional investigation, Plaintiff filed an Amended Complaint on August 7, 2020, naming PMS, Adva, and Encompass as defendants and articulating how each is the statutory sender of the fax under the TCPA.

On August 28, 2020, PMS, Adva and Encompass filed a Motion to Dismiss the Amended Complaint. PMS argued it could not be held liable, under either direct or alter ego theories of liability, for the alleged acts of Adva and Encompass. Adva and Encompass argued that the Northern District of California lacked personal jurisdiction over each of them as they are headquartered in Florida, incorporated in Delaware and sufficiently distinct from PMS as to deny jurisdiction under the theories pleaded by Plaintiff.

On November 9, 2020, the Parties mediated this matter before the Hon. Edward A. Infante (Ret.), a highly experienced mediator, who was able to assist the parties in reaching an agreement on the substantive terms of the Settlement, reflected in the Memorandum of Understanding dated November 18, 2020 (the "MOU") and subsequently memorialized in the Settlement Agreement dated February 23, 2021. The subject of attorneys' fees, costs, and expenses, subject to Court approval, was negotiated only after all substantive terms of the Settlement were agreed upon by the parties. As part of the negotiations, the parties agreed to jointly move to transfer the Action to the Middle District of Florida, and Plaintiff agreed to dismiss PMS without prejudice. The case was transferred to this district on November 17, 2020, and the Court granted dismissal of PMS on January 5, 2021. Plaintiff filed its Second Amended Complaint against Defendants Adva and Encompass (the operative complaint in this Action) on January 18, 2021.

On March 3, 2021, this Court entered its Preliminary Approval Order, preliminarily approving the Settlement and approving the form and manner of notice provided therein. ECF No. 95.

### B.  The Proposed Settlement

1.  <u>Settlement Benefits</u>

Under the proposed Settlement, Defendants have agreed to make available for the benefit of the Settlement Class a cash settlement fund that has a maximum value of $9,000,000.00, inclusive of Attorneys' Fees and Costs and Notice and Administration Costs. In accord with paragraph 30 of the Settlement Agreement, the Settlement Class shall include:

> All persons and entities since December 20, 2015 through the date of preliminary approval who held telephone numbers that received one or more telephone facsimile transmissions in a form the same or similar to Exhibit A to the Second Amended Complaint, allegedly advertising the availability or quality of property, goods or services of Defendants, as identified on the Class List of 36,416 facsimile numbers.

Excluded from the Settlement Class are all current employees, officers, and directors of any Defendant, and the judge presiding over this Action and his staff.

Each member of the Settlement Class may submit one claim per fax telephone number appearing on the Class List. Approved Claims will share in the distribution of the settlement benefits. The value of Approved Claims shall be calculated in accord with the following plan of allocation: (a) if the sum of Approved Claims, Attorneys' Fees and Costs, and Notice and Administration Costs is greater than $2,750,000.00 but less than $9,000,000.00, each Approved Claim will receive $250.00, which represents a fifty-percent recovery of the $500 statutory damages award under the TCPA; (b) if the sum of Approved Claims, Attorneys' Fees and Costs, and Notice and Administration Costs is greater than $9,000,000.00, each Approved Claim will be reduced on a *pro rata* basis; and (c) if the sum of Approved Claims, Attorneys' Fees and Costs, and Notice and Administration Costs is less than $2,750,000, each Approved Claim will be increased on a *pro rata* basis so that the total amount paid by Defendants is $2,750,000. In no

event shall Defendants pay more than $9,000,000.00 or less than $2,750,000.00 under the terms of the Settlement.

In addition to these monetary benefits, the Action and the Settlement have resulted in significant non-monetary benefits, namely review of Defendants' policies and procedures to ensure compliance with the TCPA.

In exchange for the consideration from Defendants, the Action will be dismissed with prejudice upon final approval of the Settlement and the Settlement Class Members will thereby release all claims that have been or could have been asserted against the Released Parties by any member of the Settlement Class in this Action, as set forth in the Settlement Agreement.

2. Notice

In accord with paragraph 53 of the Settlement Agreement and the Court's Preliminary Approval Order, notice to Settlement Class Members was made by (1) sending the Fax Notice and Claim Form by facsimile transmission to the facsimile numbers included in the Class List; and (2) attempting two times to re-send the Fax Notice and Claim Form to any facsimile numbers to which the Fax Notice is initially unsuccessfully sent. *See* Robinson Decl. at ¶ 5. In addition, the Notice was posted on the Settlement Website, www.specialtynetworksettlement.com. *Id*. at ¶ 6.

The Notice included the following information:  (i) a description of the Action and the material terms of the Settlement; (ii) a description of the Settlement Class Members' right to "opt out" or exclude themselves from the Settlement and the Opt-Out Deadline; (iii) a description of the Settlement Class Members' right to object to the Settlement and the Objection Deadline; (iv) specifics on the date, time and place of the Final Approval Hearing; (v) a description of the Claims process; (vi) information regarding Class Counsel's anticipated application for attorneys' fee and reasonable litigation costs and the anticipated request for a service award for the Class

Representative; (vii) the address of the Settlement Website at which Settlement Class Members may access the Settlement Agreement and other related documents and information, and (viii) the contact information of the Settlement Administrator and Class Counsel for Settlement-related inquiries. *Id*. at Ex. C.

Moreover, in accord with the Settlement Agreement and the Court's Preliminary Approval Order, the current motion, along with Plaintiff's Motion for Award of Attorneys' Fees, Litigation Costs, and Service Awards ("Plaintiff's Motion for Attorneys' Fees") will be posted on the Settlement Website.

3. <u>Class Counsel's Application for (i) Attorneys' Fees and Costs, and (ii) a Service Award</u>

In accord with the Settlement Agreement, Class Counsel is requesting an award of attorneys' fees equal to 25% of the Settlement Fund,[1] or $2,250,000, to compensate them for all of the work already performed in this case, all of the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. *See* Plaintiff's Motion for Attorneys' Fees. Class Counsel are also seeking reimbursement of their out-of-pocket litigation costs in the amount of $10,238.83.

Class Counsel is further seeking a service award of $5,000.00 for Plaintiff ("Service Award"), which, if approved, will be paid by Defendants as a separate payment, in addition to and apart from the Settlement Fund established for the benefit of the Settlement Class.[2]

---

[1] The Eleventh Circuit has set 20-30% of the fund as a "benchmark range" under the percentage-of-fund method. *In re Home Depot Inc*., 931 F.3d 1065, 1076 (11th Cir. 2019).

[2] In light of the Eleventh Circuit's recent decision in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), some district courts have determined that requests for service awards in Rule 23 class actions must be denied. *See, e.g.*, *Jairam v. Colourpop Cosmetics, LLC*, No. 19-cv-62438, 2020 WL 5848620 (S.D. Fla. Oct. 1, 2020); *Metzler v. Medical Management Int'l, Inc.*, No. 8:19-cv-2289, 2020 WL 5994537 (M.D. Fla. Oct. 9, 2020). The separate agreement for a separate award here is appropriate in the 11th Circuit after *Johnson*, as the payment does not come

7

### III.    **APPLICABLE LEGAL STANDARDS**

The approval process for a class action settlement takes place in three stages: preliminary approval, notice, and final approval. *See* Fed. R. Civ. P. 23(e). On March 3, 2021, this Court granted Plaintiff's Unopposed Motion for Preliminary Approval of Settlement and Incorporated Memorandum of Law in Support. ECF No. 95. In accord with the Court's Preliminary Approval Order, the Settlement Administrator timely and successfully completed the Court-approved notice plan. *See* Robinson Decl. at ¶¶ 5-8. Now, the Court must determine whether the Settlement taken as a whole is "fair, reasonable, and adequate," warranting final approval. *Kuss v. Am. HomePatient, Inc.*, No. 8:18-CV-2348-T-TGW, 2020 WL 7406744, at *5 (M.D. Fla. Jan. 23, 2020) (internal quotations omitted).

"Federal courts have long recognized a strong policy and presumption in favor of class action settlements. The Rule 23(e) analysis should be 'informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement.'" *Jairam v. Colourpop Cosms., LLC*, No. 19-CV-62438-RAR, 2020 WL 5848620, at *3 (S.D. Fla. Oct. 1, 2020). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing

---

from funds made available from the common fund established for the Settlement Class, but instead is to be paid separately. As a result, the prohibition on service awards in *Johnson* is distinguishable from this case and the Service Award should ultimately be approved. However, in the event this Court feels bound by *Johnson* to deny the Service Award, Plaintiff will request that the Court direct Defendants to deposit $5,000 in the registry of the Court, to be held pending the Eleventh Circuit's issuance of a mandate in *Johnson*. *See Harvey v. Hammel & Kaplan Co., LLC*, No. 3:19-cv-640, 2020 WL 7138568, at *3 (M.D. Fla. Dec. 7, 2020). In the alternative, Plaintiff asks that the Court retain jurisdiction for the limited purpose of revisiting the denial of the Service Award if the Eleventh Circuit holds a rehearing *en banc* and reverses its decision. *See Metzler*, 2020 WL 5994537, at *3.

lawsuits." *Id.* (citing *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)).

In evaluating a proposed class action settlement, "the district court may rely upon the judgment of experienced counsel for the parties." *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012). "Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." *Id.* "There exists 'an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being the most complex.'" *Hanley v. Tampa Bay Sports & Ent. LLC*, No. 819CV00550CEHCPT, 2020 WL 2517766, at *3 (M.D. Fla. Apr. 23, 2020) (citing *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)).

Under recent amendments to Rule 23(e)(2), in determining whether a proposed settlement is fair, reasonable, and adequate, courts are to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

These factors are substantially similar to those previously adopted by the Eleventh Circuit. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (identifying the following factors for consideration: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point or below the range of possible recovery at which a settlement is fair, adequate, and

reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved."); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011) (same); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *10 (N.D. Ga. Mar. 17, 2020) (finding that the *Bennett* factors "overlap" with the factors found in Rule 23(e)(2)); *Kuss v. Am. HomePatient, Inc.*, No. 8:18-CV-2348-T-TGW, 2020 WL 7406744, at *6 (M.D. Fla. Jan. 23, 2020) (stating Rule 23(e)(2) factors provide a "complementary approach" to that approved in the Eleventh Circuit.). Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acct. Overdraft Litig.*, 830 F. Supp.2d 1330, 1344 (S.D. Fla. 2011) (citation omitted).

Applying the venerable standards above, final approval should be granted because the Settlement and the notice program satisfy the requirements for final approval in all respects.

## IV. <u>THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, WARRANTING FINAL APPROVAL.</u>

### A. <u>Plaintiff and Class Counsel Have Adequately Represented the Class, Obtaining an Exceptional Settlement to Which No Class Member or Governmental Entities Have Objected.</u>

Both Plaintiff and Class Counsel have adequately represented the Class in this case. The Plaintiff has adequately represented all Class Members in this action by achieving a Settlement that provides for up to $9,000,000.00 and potential individual recoveries of $250.00, which is equal to 50% of the $500.00 statutory damages amount provided under the TCPA. In addition, Plaintiff has been actively involved throughout the course of the litigation and settlement, assisting Class Counsel in investigating claims on an individual basis, reviewing case documents, remaining apprised of the litigation, and overseeing settlement negotiations. Moreover, Plaintiff's efforts,

including the risks it voluntarily took as well as the time it expended supporting the litigation, were crucial to achieving the exceptional result for the Settlement Class.

Class Counsel have also fully and adequately represented all members of the Settlement Class. Class Counsel vigorously litigated this case including: (a) extensive pre-filing investigation; (b) drafting and filing the initial complaint and subsequent amended complaints; (c) successfully opposing Defendants' motion to dismiss; (d) participating in discovery; (e) obtaining and reviewing extensive data produced by Defendants related to the identification of class members and class damages; and (f) ultimately successfully negotiating the Settlement now before the Court. Class Counsel's efforts demonstrate that they vigorously and zealously represented the Class. It is Class Counsel's informed opinion that this Settlement represents an exceptional result and is in the best interest of the Class. *See* Pulliam Decl. at ¶ 3; *see also* Warren v. City of Tampa, 693 F. Supp. 1051, 1054 (M.D. Fla. 1988) ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation.").

Lastly, to date, no Settlement Class Member has objected to the Settlement. *See* Pulliam Decl. at ¶ 7; Robinson Decl. at ¶ 11. And, while no governmental entity is a party to this litigation, notice was issued to the appropriate federal and state officials in accordance with 28 U.S.C. § 1715, and to date, no governmental entity has raised an objection or concern about the Settlement. *See* Pulliam Decl. at ¶ 7. Accordingly, these factors weigh in favor of final approval.

B.   The Settlement Was the Result of Informed, Arm's Length Negotiations Between the Parties.

Courts recognize that arm's-length negotiations conducted by competent counsel are *prima facie* evidence of fair settlements. *See Hanley v. Tampa Bay Sports & Ent. LLC*, No. 819CV00550CEHCPT, 2020 WL 357002, at *3 (M.D. Fla. Jan. 7, 2020) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement

11

reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." (quoting *Manual for Complex Litigation,* Third, § 30.42 (West 1995)).

The Court's role is to ensure the agreement "is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett*, 737 F.2d at 986 (internal quotations omitted). "In doing so, the Court examines "whether the settlement was achieved in good faith through arms-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior or want of skill or lack of zeal on the part of class counsel." *M.D. v. Centene Corp., Inc.*, No. 1:18-CV-22372-JB, 2020 WL 7585033, at \*5 (S.D. Fla. Oct. 7, 2020). The use of a mediator "lends further support to the absence of collusion." *Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 693 (N.D. Ga. 2001); *see also Checking Account Overdraft Litig*., 275 F.R.D. at 662 (finding no collusion where settlement was reached with capable and experienced counsel and with the assistance of a well-qualified and experienced mediator).

Here, the Settlement was reached only after extensive factual investigation, motions practice, and fulsome discovery. *See* Pulliam Decl. at ¶ 15. Further, the Settlement was negotiated over the span of a full-day mediation session before a well-respected mediator, the Hon. Edward A. Infante (Ret.). During negotiations, counsel for the Defendants vigorously defended their client's position and demonstrated their commitment to litigate this Action to its conclusion. Hence, Class Counsel had a wealth of information at their disposal before entering into settlement negotiations, settlement negotiations were significant and included a lengthy mediation session, and the Settlement represents concessions by both parties. Moreover, even after reaching an agreement on the substantive terms of the Settlement, the Parties' respective counsel spent several more weeks and numerous drafts finalizing the collective settlement documents. Accordingly, the

Settlement was only reached after hard-fought litigation and protracted negotiations conducted by informed, experienced counsel on both sides who were thoroughly familiar with the factual and legal issues. *See* Pulliam Decl. at ¶¶ 4, 5.

In sum, the Settlement was achieved through arm's-length negotiations conducted by competent counsel, and there are no grounds to doubt the Settlement's fairness.

C.   The Settlement Provides Exceptional Relief for the Class and Is Within the Range of Possible Recovery.

When determining if the relief provided for the class is adequate, Rule 23 instructs this Court to take into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2). The correlating *Bennett* factors provides that a court should consider the range of possible recovery and the point at which the agreement is fair, reasonable, and adequate. *Bennett*, 737 F.2d at 986. Consideration of each of these factors weighs in favor of final approval.

### *1.   Continued litigation would be risky, complex, lengthy, and expensive.*

While Plaintiff has calculated the maximum value of its claims to be larger than the settlement amount, when the maximum value of Plaintiff's and the Class's claims are discounted by the identifiable risks, experience dictates that the interests of the Class are better served by the proposed Settlement. *See Perez v. Asurion Co.*, 501 F. Supp.2d 1360, 1381 (S.D. Fla. 2007) ("The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." (quoting *Behrens v. Wometco Enters., Inc*., 118 F.R.D. 543, 543 (S.D. Fla. 1988)); *Lipuma v. Am. Express Co*., 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) ("The Court should consider the vagaries of litigation and compare the significance of

13

immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, [i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.") (internal quotations omitted); *see also West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("In considering the proposed compromise, it seems also to be of importance that (if approved) the substantial amounts of money are available for class members now, and not at some distant time in the future. The nature of these actions is such that a final judgment, assuming it to be favorable, could only be obtained after years of expensive litigation.'"); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting that even a favorable jury verdict "is not a guarantee of ultimate success").

Here, the risks of continued litigation are significant. Defendants have vigorously denied Plaintiff's allegations of wrongdoing. *See Paugh v. Walgreen Co.*, No. 12-21229-CIV, 2014 WL 12536975, at *3 (S.D. Fla. Jan. 22, 2014); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 259-60 (S.D.N.Y. 2003) (citing *In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985)), *aff'd*, 798 F.2d 35 (2d Cir. 1986)). Defendants filed a motion to dismiss early in this case. Plaintiff anticipates that Defendants would likely have vigorously opposed class certification and moved for summary judgment if this case were to continue. Thus, continued litigation of the action would have been lengthy and expensive, requiring substantial briefing on substantive issues, with the possibility of Plaintiff litigating this case on a class basis through judgment uncertain.

Moreover, even if Plaintiff were to prevail through continued litigation and trial, it still faces significant risks as an appeal by Defendants would be likely. "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia*, 314 F. Supp. at 743-44. For example, in *In re Apple Computer*

14

*Sec. Litig.*, No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict in favor of plaintiffs and found recoverable damages in excess of $100 million. Nonetheless, the trial court disagreed and overturned the verdict, entering a judgment notwithstanding the verdict for the individual defendants and ordering a new trial with regard to the corporate defendant. *Id*.

### 2. *The Settlement is within the range of possible recovery.*

The proposed Settlement provides eligible Settlement Class Members[3] with a *pro rata* distribution, estimated to yield individual payments of approximately $250.00, a payment equivalent to 50% of the $500.00 statutory damages amount provided for under the TCPA. The Settlement also provides significant non-monetary value, in that as a result of the litigation, Defendant has reviewed its policies and procedures to ensure compliance with the TCPA. The benefits achieved for the Settlement Class are certainly within the range of possible recovery. *See Jairam v. Colourprp Cosmetics, LLC,* 0:19-cv-62438-RAR, EFC 56 (S.D. Fla. Oct. 1, 2020) (granting final approval to settlement providing for maximum cash benefit of $2,862,191.25 and $11.25 per claim); *Hanley v. Tampa Bay Sports and Entertainment LLC*, No. 8:19-cv-00550-CEH-CPT, ECF No. 94 (M.D. Fla. April 23, 2020) (granting final approval to settlement providing for maximum cash benefit of $2,250,000 and $45.00 per claim); *De Los Santos v. Millward Brown, Inc*., 9:13-cv-80670-DPG (S.D. Fla. Sept. 11, 2015) (granting final approval to settlement providing for maximum cash benefit of $11,000,000 and $50 per claim); *Ashkenazi v. Bloomingdale's, Inc.*, No. 3:15-CV-2705, ECF No. 55 (D.N.J. Dec. 21, 2018) (approving settlement valued at $1.4 million that provides for $25 cash payments or $50 vouchers per claim); *Family Med. Pharmacy, LLC v. Trxade Grp., Inc.*, No. 15-CV-590, ECF No. 38 (S.D. Ala. Mar.

---

[3] To be eligible, a Settlement Class Member must timely submit a completed Claim Form.

15

17, 2017) (approving settlement providing for $200,000 cash plus 5% discount on next purchase with defendant Westminster); *Degnen v. Gerzog*, No. 4:15-CV-1103, ECF No. 47 (E.D. Mo. April 20, 2016) (approving $1.6 million settlement that provides for $100 per claim).

### 3. The Settlement provides for a straightforward claims process.

Under the Settlement, each Settlement Class Member may submit one claim form per fax telephone number appearing on the Class List. Settlement Agreement at ¶ 60. Claim forms may be submitted by fax, by mail, or through the Settlement Website. The Claim Form is a simple form that is easy to complete without assistance. As such, the method to distribute relief is both simple and efficient.

### 4. The requested attorneys' fees are reasonable and in line with similar awards approved in the Eleventh Circuit.

As detailed in Plaintiff's Motion for Attorneys' Fees, Class Counsel requests a standard benchmark award of 25%, which is in line with similar awards approved in the Eleventh Circuit. *See Swaney v. Regions Bank*, No. 2:13-CV-00544-RDP, 2020 WL 3064945, at *7 (N.D. Ala. June 9, 2020) ("In determining an award of attorney's fees in a percentage-of-fund class settlement case, the 'benchmark' percentage is 25%, which is the dead center of the 20-30% range."); s*ee also*, *In re Home Depot Inc.*, 931 F.3d 1065, 1076 (11th Cir. 2019) ("In this Circuit, courts typically award between 20-30%, known as the benchmark range."); *Wilson v. EverBank*, 2016 WL 457011, *18 (S.D. Fla. Feb. 3, 2016) ("[F]ederal district courts across the country have, in the class action settlement context, *routinely* awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so-called 'mega-fund' cases.") (emphasis in original) (quotation omitted); *Amason v. Pantry, Inc.*, 2014 WL 12600263, *2 (N.D. Ala. July 3, 2014) ("'[T]he majority of common fund fee awards fall between 20% to 30% of the fund,' with 25% of the fund being viewed as a 'benchmark percentage fee award.'") (quotation omitted); *Allapattah Servs., Inc. v. Exxon Corp.*,

454 F. Supp. 2d 1185, 1201 (S.D. Fla. 2006) ("[I]n determining [fee] ... awards, the 'benchmark' percentage is 25%, 'which may be adjusted up or down based on the circumstances of each case.' ") (quotation omitted); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) ("[A]ttorneys' fees should be a reasonable percentage of a common fund created for the benefit of the class[ ] and set a 25% recovery as an appropriate 'benchmark.' ") (quotation omitted); *Walco Invs., Inc. v. Thenen*, 975 F. Supp. 1468, 1470 (S.D. Fla. 1997) (noting that "25% of the common fund is a 'benchmark' "); Pulliam Decl. at ¶ 19. Further, pursuant to the Settlement Agreement, Class Counsel will not receive any payment until 21 days after the Effective Date. *See* Settlement Agreement at ¶ 70. Thus, the percentage requested and the timing of the payment also weigh in favor of final approval.

### 5. The Settlement Agreement contains all agreed upon terms.

Rule 23(e)(3) requires that settling parties identify all agreements made in connection with the proposed Settlement. Here, the Settlement Agreement contains the entire agreement of the Parties; there are no side agreements. *See* Settlement Agreement at ¶ 85. Accordingly, each of these factors supports a finding that the Settlement is fair, adequate, and reasonable and weighs in favor of final approval.

### D. The Settlement Treats All Class Members Equitably and Enjoys the Support of the Settlement Class.

Under the Settlement, there is no unfair or preferential treatment of any Settlement Class Member. *See M.D. v. Centene Corp., Inc.*, 2020 WL 7585033, at *7; *see also Hendricks v. Starkist Co.*, No. 13-CV-00729-HSG, 2015 WL 4498083, at *6 (N.D. Cal. July 23, 2015). Payments to Settlement Class Members will be made on a *pro rata* basis; therefore, each Settlement Class Member is given fair and equal treatment.

Further, to date, there have been no objections and only two (2) requests for exclusion. *See*

17

Pulliam Decl. at ¶ 7; Robinson Decl. at ¶¶ 10-11. Thus, the Settlement enjoys the overwhelming support of the Settlement Class. *M.D. v. Centene Corp., Inc.*, 2020 WL 7585033, at *7 (finding the "low percentage of objections demonstrates the reasonableness of [the] settlement, and supports its approval as fair and reasonable." (internal quotation omitted)).

### E. The Notice Program Satisfies Rule 23 and Due Process, and Constitutes The Best Notice Practicable.

The Court has already determined that the notice program in this case satisfies Rule 23, and due process. Preliminary Approval Order (ECF No, 95) at ¶ 6. The Settlement Administrator has now fully implemented the notice program, providing an estimated 83% of Settlement Class Members with notice, which is well within the range endorsed by the Federal Judicial Center. *See* Robinson Decl. at ¶ 6; *see also* MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, p. 27 (3d ed. 2010) (the norm is in the 70-95% range). What is more, the Settlement Administrator continues to maintain the Settlement Website and toll-free phone line and respond to inquiries from Settlement Class Members. Accordingly, the notice provided to Settlement Class Members fulfills all of the requirements of Rule 23 and due process and constitutes the best notice practicable under the circumstances.

## V.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.

In its Preliminary Approval Order, the Court provisionally certified the Settlement Class upon concluding all of the requirements of Rule 23(a) and (b)(3) were satisfied. Specifically, the Court found as follows:

a.     The Settlement Class is so numerous that joinder of all members is impracticable;

b.     There are questions of law or fact common to the Settlement Class based upon the claims raised in the Complaint;

c.     The Plaintiff's claim is typical of the claims of the Settlement Class;

d.       The Plaintiff and Class Counsel will fairly and adequately protect the interests of the Settlement Class; and

e.       Questions of law and fact common to the Settlement Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this Lawsuit

Preliminary Approval Order (ECF No. 95) at ¶ 3.

For these same reasons, this Court should grant final certification of the Settlement Class for settlement purposes only.

## VI.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court: (i) grant final approval of the Settlement as fair, reasonable, and adequate; (ii) grant final certification to the Settlement Class; (iii) find that the notice program as set forth in Section 5 of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23(c) and (e), as well as due process, and constitutes the best notice practicable under the circumstances; and (iv) enter final judgment.

### <u>Local Rule 3.01(g) Certificate of Counsel</u>

Undersigned counsel certifies that they conferred with Defendants' counsel in a good faith effort to reach agreement on the relief requested herein, and Defendants do not oppose the requested relief.


Dated: May 14, 2021            Respectfully submitted,

By:    */s/ Randall K. Pulliam*
_____

Randall K. Pulliam (*Admitted Pro Hac Vice*)
rpulliam@cbplaw.com

CARNEY BATES & PULLIAM, PLLC
519 West 7th St.
Little Rock, AR 72201
Telephone:  501.312.8500
Facsimile:  501.312.8505

Nicole Ballante (Fla. Bar No. 125356)
nballante@baileyglasser.com
BAILEY & GLASSER, LLP
360 Central Avenue, Suite 1500
St. Petersburg, Florida 33701
Telephone: 727.894.6745
Facsimile: 727.894.2649

*Attorneys for Plaintiff*

### <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on this 14th day of May, 2021, I electronically filed the foregoing with the Clerk of Court by using CM/ECF system which will send notice of electronic filing to all counsel of record.

<u>*/s/ Randall K. Pulliam*</u>
Randall K. Pulliam

21