**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ADVANCED INTERVENTIONAL PAIN &
DIAGNOSTICS OF WESTERN ARKANSAS, LLC,

       Plaintiff,

v.                                 Case No. 8:20-cv-02704-WFJ-CPT

ADVA HOLDINGS, LLC, and ENCOMPASS
SPECIALTY NETWORK, LLC,

       Defendants.

_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES, LITIGATION
COSTS, AND SERVICE AWARD AND INCORPORATED MEMORANDUM OF LAW**

## **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................1

II.  OVERVIEW OF THE LITIGATION ...................................................................2

    A.  Background ...................................................................................................2

    B.  The Proposed Settlement ............................................................................4

        1.  Settlement Benefits ...........................................................................4

        2.  Notice ................................................................................................5

        3.  Class Counsel's Application for (i) Attorneys' Fees and Costs, and (ii) a Service Award ...............................................................................................6

III.  AS COMPENSATION FOR THEIR EFFORTS, CLASS COUNSEL SHOULD BE AWARDED A REASONABLE PERCENTAGE OF THE SETTLEMENT FUND AS ATTORNEYS' FEES ...............................................................................7

    A.  The Requested Fee of 25% of the Total Settlement Is Reasonable and Appropriate ....7

    B.  Consideration of the Relevant Factors Justify an Award of 25% of the Settlement Fund ...............................................................................................10

        1.  The time and labor required, the contingent nature of the fee, and the preclusion of other employment ...................................................................11

        2.  The difficulty of and novel issues; the experience and skill of Class Counsel; and the undesirability of the case ...............................................12

        3.  The results obtained ........................................................................15

        4.  The requested fee is consistent with customary fees and awards in similar cases ...............................................................................................16

IV.  CLASS COUNSEL'S LITIGATION EXPENSES WERE REASONABILY INCURRED IN FURTHERANCE OF THE PROSECUTION OF THE CLAIMS, AND SHOULD BE AWARDED ...............................................................................16

V.  THE REQUESTED SERVICE AWARD IS REASONABLE AND SHOULD BE APPROVED ...............................................................................................17

VI.  CONCLUSION...............................................................................................18

Plaintiff Advanced Interventional Pain & Diagnostics of Western Arkansas, LLC ("Plaintiff" or "Settlement Class Representative"), by and through undersigned counsel and pursuant to the Settlement Agreement dated February 23, 2021 (ECF No. 93-1) and this Court's Preliminary Approval Order, dated March 3, 2021 (ECF No. 95) (the "Preliminary Approval Order"), hereby respectfully requests that the Court: (i) award Class Counsel attorneys' fees in an amount equal to 25% of the Settlement Fund (defined below), or $2,250,000; (ii) award Class Counsel reimbursement of litigation costs of $11,233.33; and (iii) approve a service award of $5,000 to the Settlement Class Representative.

## I.     **INTRODUCTION**

As detailed in Plaintiff's Unopposed Motion for Final Approval being filed contemporaneously herewith, Plaintiff and Class Counsel have adequately represented the Class, obtaining an exceptional Settlement to which no class member or governmental entities have objected. The Settlement provides excellent relief, both monetary and non-monetary, for the Settlement Class. The Settlement was reached only after extensive factual investigation, motions practice, and fulsome discovery and is the product of arm's length negotiations, including a full-day mediation session, by experienced counsel with a firm understanding of the strengths and weaknesses of their clients' respective claims and defenses.

For their efforts, Class Counsel seek an award of attorneys' fees of 25% of the Settlement Fund, or $2,250,000, and reimbursement of out-of-pocket litigation costs of $11,233.33. Additionally, and separate from the common fund, Plaintiff seeks a service award of $5,000. These amounts are fair and reasonable based upon the relief achieved in this action (the Action"), the substantial effort required to obtain such relief, the complex legal issues and technical matters, the contingent nature of the representation, and awards in similar cases.

Consequently, this Court should grant Plaintiff's Motion for Attorney's Fees.

## II.   **OVERVIEW OF THE LITIGATION**

### A.  Background

On December 20, 2019, Plaintiff filed a complaint against Paradigm Management Services, LLC ("PMS"), in the Northern District of California, asserting it had violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") as a result of its alleged policy and practice of faxing unsolicited advertisements without providing the requisite opt-out notices. The TCPA makes it unlawful to send facsimile advertisements without a proper opt-out notice if the sender did not receive prior express permission from the recipient, a prohibition commonly referred to as the junk-fax ban provision of the TCPA. The TCPA provides for statutory damages of $500 for each violation of the junk-fax ban provision, which may be trebled to $1,500 per violation if a defendant's conduct is shown to be willful, knowing, or intentional.

On February 24, 2020, PMS filed a Motion to Dismiss the complaint asserting that the fax in question is an informational communication and not an advertisement. On July 1, 2020, the Court denied the Motion to Dismiss. On August 5, 2020, Plaintiff and PMS participated in a Case Management Conference with the Court at which time counsel for PMS asserted that PMS was not the proper party to the litigation as it was not the sender of the fax. Rather, as was later disclosed in discussions between counsel, PMS's position was that the proper sender of the fax was two entities related to PMS – namely Adva Holdings, LLC ("Adva") and Encompass Specialty Network, LLC ("Encompass"). With this information and upon performing additional investigation, Plaintiff filed an Amended Complaint on August 7, 2020, naming PMS, Adva, and Encompass as defendants and articulating how each is the statutory sender of the fax under the TCPA.

On August 28, 2020, PMS, Adva and Encompass filed a Motion to Dismiss the Amended Complaint. PMS argued it could not be held liable, under either direct or alter ego theories of liability, for the alleged acts of Adva and Encompass. Adva and Encompass argued that the Northern District of California lacked personal jurisdiction over each of them as they are headquartered in Florida, incorporated in Delaware and sufficiently distinct from PMS as to deny jurisdiction under the theories pleaded by Plaintiff.

On November 9, 2020, the Parties mediated this matter before the Hon. Edward A. Infante (Ret.), a highly experienced mediator, who assisted the parties in reaching an agreement on the substantive terms of the Settlement, reflected in the Memorandum of Understanding dated November 18, 2020 (the "MOU") and subsequently memorialized in the Settlement Agreement dated February 23, 2021. The subject of attorneys' fees, costs, and expenses, subject to Court approval, was negotiated only after all substantive terms of the Settlement were agreed upon by the parties. As part of the negotiations, the parties agreed to jointly move to transfer the Action to the Middle District of Florida as it is the home of the two remaining Defendants, and Plaintiff agreed to dismiss PMS without prejudice. The case was transferred to this district on November 17, 2020, and the Court granted dismissal of PMS on January 5, 2021. Plaintiff filed its Second Amended Complaint against Defendants Adva and Encompass (the operative complaint in this Action) on January 18, 2021.

On March 3, 2021, this Court entered its Preliminary Approval Order, preliminarily approving the Settlement and approving the form and manner of notice provided therein. ECF No. 95.

### B.  The Proposed Settlement

1.  <u>Settlement Benefits</u>

Under the proposed Settlement, Defendants Adva and Encompass ("Defendants") (collectively with Plaintiff, the "Parties") have agreed to make available for the benefit of the Settlement Class a cash settlement fund that has a maximum value of $9,000,000.00, inclusive of Attorneys' Fees and Costs and Notice and Administration Costs. In accord with paragraph 30 of the Settlement Agreement, the Settlement Class shall include:

> All persons and entities since December 20, 2015 through the date of preliminary approval who held telephone numbers that received one or more telephone facsimile transmissions in a form the same or similar to Exhibit A to the Second Amended Complaint, allegedly advertising the availability or quality of property, goods or services of Defendants, as identified on the Class List of 36,416 facsimile numbers.

Excluded from the Settlement Class are all current employees, officers, and directors of any Defendant, and the judge presiding over this Action and his staff.

Each member of the Settlement Class may submit one claim per fax telephone number appearing on the Class List. Approved Claims will share in the distribution of the settlement benefits. The value of Approved Claims shall be calculated in accord with the following plan of allocation: (a) if the sum of Approved Claims, Attorneys' Fees and Costs, and Notice and Administration Costs is greater than $2,750,000.00 but less than $9,000,000.00, each Approved Claim will receive $250.00, which represents a fifty-percent recovery of the $500 statutory damages award under the TCPA (b) if the sum of Approved Claims, Attorneys' Fees and Costs, and Notice and Administration Costs is greater than $9,000,000.00, each Approved Claim will be reduced on a *pro rata* basis; and (c) if the sum of Approved Claims, Attorneys' Fees and Costs, and Notice and Administration Costs is less than $2,750,000, each Approved Claim will be increased on a *pro rata* basis so that the total amount paid by Defendants is $2,750,000. In no

event shall Defendants pay more than $9,000,000.00 or less than $2,750,000.00 under the terms of the Settlement.

In addition to these monetary benefits, the Action and the Settlement have resulted in significant non-monetary benefits, namely review of Defendants' policies and procedures to ensure compliance with the TCPA.

In exchange for the consideration from Defendants, the Action will be dismissed with prejudice upon final approval of the Settlement and the Settlement Class Members will thereby release all claims that have been or could have been asserted against the Released Parties by any member of the Settlement Class in this Action, as set forth in the Settlement Agreement.

  2. <u>Notice</u>

In accord with paragraph 53 of the Settlement Agreement and the Court's Preliminary Approval Order, notice to Settlement Class Members was made by (1) sending the Fax Notice and Claim Form by facsimile transmission to the facsimile numbers included in the Class List; and (2) attempting two times to re-send the Fax Notice and Claim Form to any facsimile numbers to which the Fax Notice is initially unsuccessfully sent. *See* Robinson Decl. at ¶ 5. In addition, the Notice was posted on the Settlement Website, www.specialtynetworksettlement.com. *Id*. at ¶ 7.

The Notice included the following information:  (i) a description of the Action and the material terms of the Settlement; (ii) a description of the Settlement Class Members' right to "opt out" or exclude themselves from the Settlement and the Opt-Out Deadline; (iii) a description of the Settlement Class Members' right to object to the Settlement and the Objection Deadline; (iv) specifics on the date, time and place of the Final Approval Hearing; (v) a description of the Claims process; (vi) information regarding Class Counsel's anticipated application for attorneys' fee and reasonable litigation costs and the anticipated request for a service award for the Class

Representative; (vii) the address of the Settlement Website at which Settlement Class Members may access the Settlement Agreement and other related documents and information, and (viii) the contact information of the Settlement Administrator and Class Counsel for Settlement-related inquiries. *Id*. at Ex. C.

Moreover, in accord with the Settlement Agreement and the Court's Preliminary Approval Order, the current motion, along with Plaintiff's Motion for Final Approval of Class Action Settlement will be posted on the Settlement Website.

     3.   <u>Class Counsel's Application for (i) Attorneys' Fees and Costs, and (ii) a Service Award</u>

In accord with the Settlement Agreement, Class Counsel is requesting an award of attorneys' fees equal to 25% of the Settlement Fund,[1] or $2,250,000, to compensate them for all of the work already performed in this case, all of the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. *See infra*. Class Counsel are also seeking reimbursement of their out-of-pocket litigation costs in the amount of $11,233.33.

Class Counsel is further seeking a service award of $5,000.00 for Plaintiff ("Service Award"), which, if approved, will be paid by Defendants as a separate payment, in addition to and apart from the Settlement Fund established for the benefit of the Settlement Class.

---

[1] The Eleventh Circuit has set 20-30% of the fund as a "benchmark range" under the percentage-of-fund method. *In re Home Depot Inc*., 931 F.3d 1065, 1076 (11th Cir. 2019).

III.   **AS COMPENSATION FOR THEIR EFFORTS, CLASS COUNSEL SHOULD BE AWARDED A REASONABLE PERCENTAGE OF THE SETTLEMENT FUND AS ATTORNEYS' FEES.**

   **A. The Requested Fee of 25% of the Total Settlement Is Reasonable and Appropriate.**

It has long been recognized that a person who maintains a suit that results in the creation of a benefit in which others have a common interest may obtain fees from that common benefit. *In re Home Depot Inc.*, 931 F.3d 1065, 1079 (11th Cir. 2019) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)) ("A common-fund case is when 'a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole'"); *see also Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885). Furthermore, the Supreme Court has consistently held that the percentage of the recovery approach is an appropriate methodology for awarding fees to plaintiffs' counsel in a common fund case. *See Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class . . . ."); *see also Sprague*, 307 U.S. at 164-65; *Central R.R. & Banking Co.*, 113 U.S. at 123.

The Eleventh Circuit requires an award of attorneys' fees from a common fund to be determined using the percentage of the fund method. *In re Home Depot*, 931 F.3d at 1081 ("In common-fund cases, we have directed courts to use the percentage method."); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."). Moreover, under both Eleventh Circuit and Florida District Court precedent, 25% is the benchmark percentage for common fund recovery cases. *See In re Home Depot*, 931 F.3d at 1076 ("In this Circuit, courts

7

typically award between 20-30%, known as the benchmark range."); *Camden I*, 946 F.2d at 775 (recognizing 25% as the "benchmark" for a percentage fee award); *Wilson v. EverBank*, 2016 WL 457011, \*18 (S.D. Fla. Feb. 3, 2016) ("[F]ederal district courts across the country have, in the class action settlement context, *routinely* awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so-called 'mega-fund' cases.") (emphasis in original) (quotation omitted); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011) ("[T]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund, although an upper limit of 50 percent of the fund may be stated as a general rule.") (internal quotation omitted); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1201 (S.D. Fla. 2006) ("[I]n determining [fee] ... awards, the 'benchmark' percentage is 25%, 'which may be adjusted up or down based on the circumstances of each case.'") (quotation omitted); *Walco Invs., Inc. v. Thenen*, 975 F. Supp. 1468, 1470 (S.D. Fla. 1997) (noting that "25% of the common fund is a 'benchmark'").

Recently, Judge Honeywell in the Middle District considered the issue of determining a reasonable fee in a TCPA case that created a common-fund in *Hanley v. Tampa Bay Sports & Ent. LLC*, No. 819CV00550CEHCPT, 2020 WL 2517766 (M.D. Fla. Apr. 23, 2020). In that matter, which involved a common fund of not less than $1.4 million and a maximum value of $2.25 million, the Court awarded an attorneys' fee of 35% of $2.25 million. In applying Eleventh Circuit precedent, the Court determined

> [b]ecause this is not a coupon settlement and the Settlement Class Members will receive direct cash distributions, the Court does not calculate reasonable attorneys' fees pursuant to the provisions of 28 U.S.C. § 1712. Instead, to determine attorneys' fees in a case involving a class action settlement that created a reversionary common fund, [the Eleventh Circuit] held that attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.

*Id*. at \*5 (internal quotations and citations omitted). The *Hanley* court continued, finding "[t]he percentage applies to the total fund created, even where the actual payout following the claims process is lower." *Id*. (citing *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) and *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999)).

The Eleventh Circuit has found it appropriate for a court to look at the maximum value of the common fund created when determining the appropriate attorneys' fee. *See Carter v. Forjas Taurus, S.A.,* 701 F. App'x 759, 766-7 (11th Cir. 2017) ("Scheffler and Jordan challenge the district court's award of $8.3 million in attorney's fees. They say that while the class could receive as much as $30 million, it is likely to receive much less because Taurus will keep any unclaimed money. They argue the attorney's fee should have been calculated based on the amount actually paid to the class. But this is not required by our precedent."). Hence, "[t]he percentage applies to the total benefits provided, even where the actual payments to the class following a claims process is lower." *Hall v. Bank of Am., N.A*., No. 12-22700, 2014 WL 7184039, at \*9 (S.D. Fla. Dec. 17, 2014); *see also Montoya v. PNC Bank, N.A*., No. 14-20474, 2016 WL 1529902, \*23 (S.D. Fla. Apr. 14, 2016) ("the valuation of counsel's fee should be based on the opportunity created for the Settlement Class … [a]nd counsel should not be penalized for class members' failure to take advantage of such a settlement"). Indeed, the Eleventh Circuit has stated "[n]o case has held that a district court must consider only the actual payout in determining attorneys' fees." *Carter v. Forjas Taurus, S.A.,* 701 F. App'x 759, 767 (11th Cir. 2017).

Here, the Settlement provides for up to $9,000,000.00, with potential individual recoveries of $250.00, which is equal to 50% of the $500.00 statutory damages amount provided under the TCPA. In addition to these monetary benefits, the Action and the Settlement have resulted in significant non-monetary benefits, namely review of Defendants' policies and procedures to

9

ensure compliance with the TCPA. Consideration of the benefits achieved in this case demonstrates that a benchmark award of 25% is a reasonable and appropriate fee award in this case. *See, e.g., Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243–44 (11th Cir. 2011) (affirming fee award and noting "the 1.5 million payment is designed to compensate the class counsel for the non-monetary benefits they achieved for the class—like company-wide policy changes.").

### B. Consideration of the Relevant Factors Justify an Award of 25% of the Settlement Fund.

In determining the reasonableness of the percentage to be awarded, courts in the Eleventh Circuit also consider the factors set forth in *Johnson v. Georgia Highway Expr., Inc*., 488 F. 2d 714 (5th Cir. 1974),[2] or the "Johnson factors." *See In re Home Depot,* 931 F.3d at 1090 ("With the percentage method, courts use the *Johnson* factors to help determine what percentage of the fund to award to counsel."); *see also Camden I*, 946 F.2d at 775; *Spinelli v. Cap. One Bank (USA), N.A.*, No. 8:08-CV-132-T-33EAJ, 2010 WL 11475481, at *1 (M.D. Fla. Dec. 22, 2010) ("[t]he award of attorneys fees is premised upon a consideration of all the *Johnson* factors."). The *Johnson* factors include: : (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F. 2d at 772.

Each of these factors confirms the reasonableness of the requested fee.

---

[2] "As a Fifth Circuit decision issued before October 1, 1981, the decision is binding precedent in the Eleventh Circuit." *Stein v. Buccaneers Ltd. P'ship*, 772 F. 3d 698, 704 (11th Cir. 2014).

1. ***The time and labor required, the contingent nature of the fee, and the preclusion of other employment.***

The Supreme Court has recognized that "complex civil litigation involving numerous challenges to institutional practices or conditions . . . is lengthy and demands many hours of lawyers' services." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). And while "the hours claimed or spent on a case should not be the sole basis for determining a fee ... they are a necessary ingredient to be considered." *Johnson*, 488 F.2d at 717.

Here, Class Counsel dedicated considerable time and effort to pre-filing investigation into the claims and potential defenses at issue in the Action, drafting the Complaint and amended complaints, analyzing and responding to the arguments presented in Defendants' Motion to Dismiss, propounding discovery and reviewing documents, mediation, and negotiating the Settlement. While Class Counsel worked efficiently and resolved the case at a relative early stage, this favorable resolution would not have been possible without the time, effort, and skillful work of Class Counsel. Collectively, Class Counsel have devoted 855.35 hours to the case. *See* Pulliam Decl. at ¶ 18. Class Counsel anticipates that it will expend additional time and labor in connection with overseeing Settlement administration, assisting Settlement Class Members and answering any questions, and tending to any issues that may arise relating to the Settlement. Accordingly, the time and labor expended by Class Counsel supports the requested fee is reasonable and fair.

Moreover, "[m]indful of the need to attract counsel of this high caliber, courts have recognized the importance of providing incentives to experienced counsel who take on complex litigation cases on a contingent fee basis so those cases can be prosecuted both efficiently and effectively." *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012), *report and recommendation adopted,* No. 03-22778-CIV, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012). Class Counsel took this case on a fully contingent basis, investing time, effort and

money with no guarantee of ever getting paid. Thus, the contingent nature of the fee also weighs in favor of Class Counsel's requested fee. *Id*. ("It was Class Counsel alone that bore the entire risk of this representation—a significant finding in support of the requested fee."); *see also Pinto*, 513 F. Supp. 2d at 1339 ("A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high."); *In re Checking Acc't Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("A contingency fee arrangement often justifies an increase in the award of attorney's fees."); *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, at *14 (S.D. Fla. Jan. 31, 2008) ("Attorneys' risk is perhaps the foremost factor in determining an appropriate fee award."); *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result.").

Further, had Class Counsel not taken a role in this litigation, they would have been free to allocate their time and resources elsewhere. Thus, this factor further supports the requested fee award. *See Johnson*, 488 F.2d at 718 ("Priority work that delays the lawyer's other legal work is entitled to some premium.").

### 2. *The difficulty of and novel issues; the experience and skill of Class Counsel; and the undesirability of the case.*

This case involved difficult and novel issues and the risk of not prevailing on the claims was substantial. For example, the decision in *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1083 (D.C. Cir. 2017)[3] has heightened the complexity and intricacy of the legal and factual issues

---

[3] In March 2017, a split panel of the D.C. Circuit held that the Solicited Fax Rule, a term used to describe the FCC's 2006 ruling requiring opt-out notices to be included on faxes whether unsolicited or solicited, was "unlawful to the extent it requires opt-out notices on solicited faxes." *Bais Yaakov of Spring Valley v.*

12

involved in this type of case, which translates into considerable and material risk that Plaintiff would not secure a recovery that would be greater than the amount of money recovered for the Class through the Settlement. In fact, there is a significant risk here that Plaintiff's Counsel could prosecute this case for several more years (through full discovery, including expert discovery, class certification, summary judgment, trial and the inevitable appeals that would follow) and, in the end, recover less than the proposed Settlement, or nothing, for the Class. *See In re Ikon Office Solutions Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000) (noting where large sums of money are at issue, litigation is guaranteed to be long, drawn-out, and any plaintiff's verdict would be appealed by defendants, further extending litigation); *accord In re Aetna Inc. Sec. Litig.*, No 1219, 2001 U.S. Dist. LEXIS 68, *22 (E.D. Pa. Jan. 4, 2001) ("The risk of delay could have deleterious effects on any future recovery").

In addition, in December 2019, the FCC issued a ruling which Defendants could argue provides support for their defense: *In the Matter of Amerifactors Financial Group, LLC Petition for Expedited Declaratory Ruling*, 2019 FCC LEXIS 3608, DA 19-1247 (December 9, 2019),

---

*FCC*, 852 F.3d 1078, 1083 (D.C. Cir. 2017). Prior to the D.C. Circuit's *Bais Yaakov* opinion, courts generally agreed that a fax sender could not claim the defense of consent unless the fax contained sufficient opt-out language as described above. *See Nack*, 715 F.3d at 685 ("the regulation as written requires the senders of fax advertisements to employ the above-described opt-out language even if the sender received prior express permission to send the fax."); *Brodsky v. HumanaDental Ins. Co.*, 2014 U.S. Dist. LEXIS 80790, at *30 (N.D. Ill. June 12, 2014) (finding that even if a sender has received prior express consent to send another party a fax, the party may nevertheless pursue a private cause of action against the sender if the fax does not comply with the opt-out requirements of the TCPA); *C-Mart*, 299 F.R.D. at 688-89 (noting that "[t]he fact that Defendants may have obtained the fax numbers through a prior relationship with the class members or through voluntary consent does not eliminate the TCPA's opt-out notice requirement."); *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, 2013 U.S. Dist. LEXIS 136819, *21 (N.D. Ill. Sept. 24, 2013) ("While the TCPA discusses the opt-out notice is required in an unsolicited faxed advertisement, the corresponding regulation to the TCPA, 47 C.F.R. § 64.1200[(a)(4)(iv)], states that proper opt-out notice is required regardless of whether the faxed advertisement was solicited or unsolicited."); *Doctor Diabetic Supply, LLC*, 2014 U.S. Dist. LEXIS 177222, at *14 ("And even if the recipient consented, FCC regulations require that any fax advertisement include an opt-out notice. Courts routinely certify TCPA class actions precisely because the requirement of an opt-out notice obviates the need to consider consent or established business relationships."). Post-*Bais Yaakov*, there appears to be a dispute among circuits as to what is necessary to claim the defense of consent.

which found that online fax services that receive unsolicited fax advertisements "sent as email over the Internet" and that cannot transcribe faxes onto paper like traditional fax machines are not telephone facsimile machines under the TCPA.

Further, Defendants asserted that Class Members consented to receive Defendants' text messages and that they complied with the TCPA. While Plaintiff believed its positions on these matters were meritorious, Defendants' arguments presented challenges to recovery. The uncertainty surrounding these rulings and issues presented substantial risks to the Plaintiff and the Settlement Class Members' ability to obtain any recovery.

Notwithstanding the complexity and difficulty of the issues involved in this case, Class Counsel was able to negotiate an excellent recovery for the Class. Class Counsel respectfully submit that the work they performed in this litigation reflect their skill and experience in complex class litigation. Additionally, the firm resume of Carney Bates & Pulliam, PLLC attests to the national reputation and extensive experience of Class Counsel in the area of complex class litigation. *See* Pulliam Declaration at Exs. 1-3. Accordingly, the quality and skill involved in the services performed by Class Counsel support the requested fee.

Lastly, because the TCPA does not provide for an award of attorneys' fees to a prevailing plaintiff, Class Counsel's recovery of costs and fees in this case has always been contingent on a successful outcome and substantial recovery. Such a substantial risk of nonpayment in return for advancing all of the costs and fees demonstrates the undesirability of the case. Very few lawyers are willing to invest significant time and advance their own money to prosecute a lawsuit that involves complicated and uncertain legal questions and a substantial risk of receiving no compensation. And while Class Counsel was able to achieve an excellent result for the Settlement Class, this outcome was anything but certain until the Settlement was reached. As such, the

"undesirability" of this case is a factor that weighs heavily in favor of the reasonableness of the requested fee award. *See In re Checking Account Overdraft Litig*., 830 F. Supp. 2d at 1364 ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight.") (citing *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp*., 540 F. 2d 102, 112 (3d Cir. 1976)).

### 3.  *The results obtained.*

As noted above in Section III(A), the Settlement provides eligible Settlement Class Members[4] with a *pro rata* distribution, estimated to yield individual payments of not less than $250.00, a payment equivalent to 50% of the $500.00 statutory damages amount provided for under the TCPA. In addition to these monetary benefits, the Action and the Settlement have resulted in significant non-monetary benefits, namely review of Defendants' policies and procedures to ensure compliance with the TCPA. Class Counsel believe this is an *excellent* recovery for the Settlement Class. *See Jairam v. Colourpop Cosmetics, LLC*, No. 19-cv-62438-RAR, 2020 WL 5848620 (S.D. Fla. Oct. 1, 2020) (granting final approval to settlement providing for maximum cash benefit of $2,862,191.25 and $11.25 per claim); *Hanley v. Tampa Bay Sports and Entertainment LLC*, No. 8:19-cv-00550-CEH-CPT, 2020 WL 2517766 (M.D. Fla. April 23, 2020) (granting final approval to settlement providing for maximum cash benefit of $2,250,000 and $45.00 per claim); *De Los Santos v. Millward Brown, Inc*., No. 9:13-cv-80670-DPG, 2015 WL 11438497 (S.D. Fla. Sept. 11, 2015) (granting final approval to settlement providing for maximum cash benefit of $11,000,000 and $50 per claim); *Ashkenazi v. Bloomingdale's, Inc.*, No. 3:15-CV-2705, ECF No. 55 (D.N.J. Dec. 21, 2018) (approving settlement valued at $1.4 million

---

[4] To be eligible, a Settlement Class Member must timely submit a completed Claim Form.

that provides for $25 cash payments or $50 vouchers per claim); *Family Med. Pharmacy, LLC v. Trxade Grp., Inc.*, No. 15-0590-KD-B, 2017 WL 1042079 (S.D. Ala. Mar. 17, 2017) (approving settlement providing for $200,000 cash plus 5% discount on next purchase with defendant Westminster); *Degnen v. Gerzog*, No. 4:15-CV-1103, ECF No. 47 (E.D. Mo. Apr. 20, 2016) (approving $1.6 million settlement that provides for $100 per claim).

Consequently, the reasonableness of the requested fee is supported by the exceptional result obtained.

### 4. *The requested fee is consistent with customary fees and awards in similar cases.*

As set forth in Section III(A) above, 25% of the total Settlement is customary in common fund cases. *See supra*. Class Counsel's requested fee is thus entirely consistent with the percentage customarily awarded to counsel in similar cases in the Eleventh Circuit. Accordingly, these factors weigh in favor of Class Counsel's requested fee.

## IV.   CLASS COUNSEL'S LITIGATION EXPENSES WERE REASONABILY INCURRED IN FURTHERANCE OF THE PROSECUTION OF THE CLAIMS, AND SHOULD BE AWARDED.

The Settlement terms and well-settled precedent support Class Counsel's entitlement to recovery of out-of-pocket costs reasonably incurred in investigating, prosecuting, and settling these claims. *See* Fed. R. Civ. P. 23(h); *Dowdell v. City of Apopka*, 698 F. 2d 1181, 1191-92 (11th Cir. 1983) ("[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988."); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." (citing Herbert B. Newberg, *Attorney Fee*

16

*Awards* (1986) § 2.19: "Costs Reimbursement in Common Fund Fee Determinations," at 69 and *Mills,* 396 U.S. at 391–92).

Here, Class Counsel have incurred $11,233.33 in unreimbursed out-of-pocket costs over the course of this litigation. Pulliam Decl. at ¶ 20. These costs were associated with mediation fees, filing and pro hac vice fees, legal research, postage/overnight delivery, telephone conferencing and facsimile, travel and other customary litigation expenses, and were reasonably incurred in furtherance of the investigation, prosecution, and Settlement of the Action. *Id*. Consequently, these costs are the type regularly reimbursed by courts and should be awarded. *See, e.g., Briggins v. Elwood TRI, Inc*., 3 F. Supp. 3d 1277, 1297 (N.D. Ala. 2014) (finding fees including "filing fees, witness fees, court reporter fees, and other miscellaneous expenses" were "reasonable and necessary, and should be approved.").

## V.     THE REQUESTED SERVICE AWARD IS REASONABLE AND SHOULD BE APPROVED.

In light of the Eleventh Circuit's recent decision in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), some district courts have concluded that requests for service awards in Rule 23 class actions must be denied. *See, e.g.*, *Jairam v. Colourpop Cosmetics*, *LLC*, No. 19-cv-62438, 2020 WL 5848620 (S.D. Fla. Oct. 1, 2020); *Metzler v. Medical Management Int'l, Inc.*, No. 8:19-cv-2289, 2020 WL 5994537 (M.D. Fla. Oct. 9, 2020). The separate agreement for a separate award here is appropriate in the Eleventh Circuit after *Johnson*, as the payment does not come from funds made available from the common fund established for the Settlement Class, but instead is to be paid separately. As a result, the prohibition on service awards in *Johnson* is distinguishable from this case and the Service Award should be approved. However, in the event this Court feels bound by *Johnson* to deny the Service Award, Plaintiff will request that the Court direct Defendants to deposit $5,000 in the registry of the Court, to be held pending the Eleventh

17

Circuit's issuance of a mandate in *Johnson*. *See Harvey v. Hammel & Kaplan Co.*, *LLC*, No. 3:19-cv-640, 2020 WL 7138568, at *3 (M.D. Fla. Dec. 7, 2020). In the alternative, Plaintiff asks that the Court retain jurisdiction for the limited purpose of revisiting the denial of the Service Award if the Eleventh Circuit holds a rehearing *en banc* and reverses its decision. *See Metzler*, 2020 WL 5994537, at *3.

## VI.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (i) award Class Counsel attorneys' fees of 25% of the Settlement Fund, or $2,250,000; (ii) award Class Counsel reimbursement of litigation expenses of $11,233.33; and (iii) award service awards in the amount of $5,000 to the Settlement Class Representative.

### Local Rule 3.01(g) Certificate of Counsel

Undersigned counsel certifies that they conferred with Defendants' counsel in a good faith effort to reach agreement on the relief requested herein, and Defendants do not oppose the requested relief.

Dated: May 14, 2021             Respectfully submitted,

By*:*     */s/ Randall K. Pulliam*

Randall K. Pulliam (*Admitted Pro Hac Vice*)
rpulliam@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 West 7th St.
Little Rock, AR 72201
Telephone:  501.312.8500
Facsimile:  501.312.8505

Nicole Ballante (Fla. Bar No. 125356)
nballante@baileyglasser.com
BAILEY & GLASSER, LLP
360 Central Avenue, Suite 1500
St. Petersburg, Florida 33701
Telephone: 727.894.6745

18

Facsimile: 727.894.2649

*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 14th day of May, 2021, I electronically filed the foregoing with the Clerk of Court by using CM/ECF system which will send notice of electronic filing to all counsel of record.

 */s/ Randall K. Pulliam*
Randall K. Pulliam

19